IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE B. SMITH, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:19-CV-927-ECM |
| | ) | [WO] |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Willie B. Smith, III ("Smith") is an Alabama death-row inmate in the custody of the Alabama Department of Corrections ("ADOC").  On November 25, 2019, Smith filed a Complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, asserting two causes of action against the Commissioner of ADOC and the Warden of Holman Correctional Facility in their official capacities.  Specifically, Smith asserts that (1) Alabama's three-drug lethal injection execution protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution; and (2) the Defendants violated his statutory rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*., ("ADA").  (Doc. 1).  Smith seeks declaratory and injunctive relief.  (*Id*.).  On December 1, 2020, the Alabama Supreme Court set February 11, 2021 as the date for Smith's execution.  (Doc. 17).

Now pending before the Court is the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 10). The motion is fully briefed and ripe for resolution. The Court heard oral argument on the motion on December 11, 2020. For the reasons that follow, the Defendants' motion to dismiss is due to be GRANTED.

## II. BACKGROUND

Lethal injection is the default method of execution in the State of Alabama. (Doc. 1 at 5, para. 27); ALA. CODE § 15-18-82.1(a). Alabama utilizes a three-drug lethal injection protocol. (Doc. 1 at 3, para. 11). The protocol calls for sequential injections of midazolam, rocuronium bromide or vercuronium bromide, and potassium chloride in varying dosages. (*Id*. at para. 12–13). The State began using midazolam in 2014 when it substituted it for another drug in the three-drug protocol. (Doc. 20 at 8).

In March 2018, the Governor signed into law Senate Bill 272, which added nitrogen hypoxia as an alternative method of execution in Alabama.[1] (Doc. 1 at 5, para. 26); *see also* ALA. CODE § 15-18-82.1(b)(2). The statute permits a death row inmate one opportunity to elect execution by nitrogen hypoxia. (Doc. 1 at 5, para. 28). Otherwise, the inmate waives the right to elect the alternative method and will be executed by lethal injection. (*Id.* at para. 27). The bill became effective on June 1, 2018. (*Id*. at para. 30).

Smith did not elect to be executed by nitrogen hypoxia within the prescribed period in 2018. (*Id.* at 6, para. 37).

---

[1] Electrocution is also an alternative method of execution in Alabama.

Smith asserts that "Alabama's method of execution by lethal injection violates [his] Eighth Amendment right to be free from cruel and unusual punishment because employing midazolam as the intended anesthetic creates a substantial risk of pain when compared to [his] alternative of nitrogen asphyxiation." (Doc. 1 at 7).  Smith further claims that he is intellectually disabled, rendering him "unable to personally make the election in the manner specified in Senate Bill 272."  (*Id.* at 9, para. 54).  Smith asserts that "Defendants' failure to provide reasonable accommodations for [him] in light of his disability violates his rights under the ADA."  (*Id.* at para. 55).

### III.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331.  In supplemental briefing, the Parties addressed the impact of *Nance v. Comm'r, Ga. Dep't of Corr.*, 2020 WL 7053495 (11th Cir. Dec. 2, 2020), on this Court's subject matter jurisdiction. (Docs. 19 and 20).  The Parties agree, and the Court has independently determined, that because Alabama has alternative methods of execution, *Nance* is inapplicable to the case at bar. (*Id.*).  Consequently, the Court has subject matter jurisdiction over Smith's claims.

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

### IV.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions.  *Iqbal*, 556 U.S. at 664.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.  *See id.* at 679 (explaining, "only a complaint that states a plausible claim for relief survives a motion to dismiss").  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.*  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  It is the Plaintiff's responsibility to allege sufficient facts to support his claims.  *Twombly*, 550 U.S. at 555.

4

## V.  DISCUSSION

The Defendants raise multiple bases for their motion to dismiss.  The Court determines that two of the Defendants' arguments merit discussion.  First, the Defendants assert that the Plaintiff's Eighth Amendment claim should be dismissed because it is untimely.  Second, the Defendants argue that the Plaintiff's ADA claim should be dismissed because the Plaintiff fails to state a claim for which relief can be granted.[2]  The Court addresses each in turn.

### A.  Eighth Amendment lethal injection claim

Smith is scheduled to be executed by lethal injection on February 11, 2021.  (Doc. 17).  According to Smith, Alabama's three-drug lethal injection protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment.  Specifically, he challenges the use of midazolam in the three-drug protocol.

The Defendants assert that Smith's Eighth Amendment claim is barred by the statute of limitations.[3]  They argue that because Smith did not bring his challenge to the lethal injection protocol within two years of its having undergone a substantial change (the substitution of midazolam) in 2014, it is time-barred.  Smith asserts that the addition of

---

[2] The Defendants argue that Smith does not have standing to bring a claim under the ADA because he does not seek to elect nitrogen hypoxia, "only that he wants 'reasonable accommodations' concerning the election opportunity." (Doc. 15 at 11).  According to the Defendants, "[i]f Smith would not necessarily elect hypoxia, given hypothetical accommodations, then he has not alleged an injury in fact." *Id.*  The Defendants, however, fail to explain how the outcome of Smith's participation in the election process determines his standing to assert a claim regarding his ability to participate in it.  The Court is satisfied that Smith has standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

[3]  Although the Defendants first raised the statute of limitations defense in their reply brief, (doc. 15), the Parties have fully briefed the limitations issue, and the Court heard oral argument on December 11, 2020.  The Court concludes that the issue is properly before it.

nitrogen hypoxia as an alternative method in 2018 constitutes a substantial change to Alabama's execution protocol, resetting the statute of limitations.

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted).  Moreover, because the Plaintiff is proceeding *in forma pauperis*, the Court shall dismiss his case "at any time if the court determines that . . . the action . . . fails to state a claim for which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  Therefore, if Smith's Eighth Amendment claim is time-barred, the Court is required to dismiss the case because he has failed "to state a claim on which relief may be granted." *Id.*; *see also West v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1289, 1298 (11th Cir. 2017) ("A complaint must also be dismissed if it is time-barred under the applicable statute of limitations.").

To determine the statute of limitations for a claim brought pursuant to § 1983, the Court looks to the law of the state where the claim accrued.  "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  In Alabama, the statute of limitations applicable to personal injury actions is two years. *Id.*; *see also* ALA. CODE § 6-2-38. Therefore, in order for Smith's Eighth Amendment claim to be timely, it must have been brought within two years of its accrual.

An Eighth Amendment method-of-execution claim "accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject

to a new or substantially changed execution protocol." *West,* 869 F.3d at 1298; *McNair,* 515 F.3d at 1174. "However, a substantial change to a state's lethal injection protocol doesn't create an open season on all aspects of the state's protocol." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 873 (11th Cir. 2017). "[A] claim that accrues by virtue of a substantial change in a state's execution protocol is *limited to the particular part* of the protocol that changed." *Id.* at 873 (emphasis added) (quoting *Gissendaner v. Comm'r, GA. Dep't of Corr.*, 779 F.3d 1275, 1280–81 (11th Cir. 2015)). Thus, "a substantial change to one aspect of a state's execution protocol does not allow a prisoner whose complaint would otherwise be time-barred to make a wholesale challenge to the State's protocol." *Gissendaner*, 779 F.3d at 1281 (internal quotations omitted).

Even though Smith unequivocally and specifically challenges the use of midazolam in the three-drug lethal injection protocol, (doc. 1 at 3–4, paras. 13–25), he argues that the statute of limitations began to run in 2018 when Alabama authorized nitrogen hypoxia as an alternative method of execution. (Doc. 20 at 8). Lethal injection using a three-drug protocol has been the primary method of execution in Alabama since 2002. *Boyd*, 856 F.3d at 874; *see also* ALA. CODE § 15-18-82.1(a). Smith has been subject to the three-drug lethal injection protocol since then. On September 10, 2014, the ADOC substituted midazolam for pentobarbital as the first drug administered in the lethal injection protocol. Smith, therefore, became subject to execution by the three-drug protocol with midalozam on that date.

Assuming that the change to midazolam constitutes "a new or substantially changed execution protocol[,]"[4] Smith's statute of limitations began to run, at the latest, on September 10, 2014 when he became subject to lethal injection using midazolam. "[A] federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *McNair*, 515 F.3d at 1174 (quoting *Corn v. City of Lauderdale Lakes,* 904 F.2d 585, 588 (11th Cir. 1990)). Smith conceded at oral argument that he could have brought his claim as early as 2014 but did not.

Rather, Smith argues that the addition of nitrogen hypoxia as an alternative method of execution in 2018 constitutes a substantial change to Alabama's execution scheme sufficient to restart the statute of limitations period. According to Smith, his limitations period was reset because he could not have alleged nitrogen hypoxia as an alternative method of execution until it was adopted by the State. However, Smith offers no authority for the proposition that the evolution of death penalty jurisprudence on that issue constitutes a substantial change to the lethal injection protocol, sufficient to reset his statute of limitations. Ultimately, Smith challenges the State's three drug protocol using midazolam, a method of execution which has not changed since 2014.

In his Complaint, while Smith challenges the use of midazolam, he does not challenge nitrogen hypoxia as a method of execution. A substantial change to a method of execution protocol sufficient to restart the statute of limitations must be specific to the

---

[4] Although Smith is challenging the use of midazolam in the lethal injection protocol, he alleges no facts in his Complaint that the change to midazolam constitutes a substantial change to Alabama's execution protocol. *West*, 869 F.3d at 1301 ("[T]he prisoner must additionally show that the substitution of one drug for another represents a 'substantial change' in protocol.").

particular protocol.  In other words, in order for the statute of limitations to reset on method of execution cases challenging Alabama's lethal injection method, Alabama must make significant alteration to that specific method of execution. *See West*, 869 F.3d at 1301; *Boyd*, 856 F.3d at 873; *Gissendaner*, 779 F.3d at 1280; *McNair*, 515 F.3d at 1174.

The three-drug lethal injection protocol Smith now challenges was introduced in 2014.  Therefore, the statute of limitations expired in 2016.  Smith filed this § 1983 action on November 25, 2019, long after the expiration of the two-year statute of limitations. Consequently, Smith's Eighth Amendment method-of-execution claim is untimely and is due to be dismissed.

### B.  The ADA claim

The Defendants assert that Smith fails to state a claim for relief under Title II of the ADA. (Docs. 10 at 31; 15 at 6–11).  The Defendants argue that Smith is not intellectually disabled, and thus is afforded no relief under the ADA. (Doc. 10 at 31–34) (relying on Smith's Rule 32 proceedings in his petition for habeas relief pursuant to 28 U.S.C. § 2254); *see generally Smith v. Comm'r, Ala. Dep't of Corr.*, 924 F.3d 1330 (11th Cir. 2019). Because the matter is before the Court on a motion to dismiss, the Court does not look past the allegations in the Complaint.

The determination as to whether Smith has a disability for the purposes of this litigation is governed by the ADA.  The ADA defines  disability as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  In his Complaint, Smith asserts that he is "a qualified individual with a disability," that he is "intellectually disabled," and that his "intellectual disability renders him unable to personally make the election in the manner specified in Senate Bill 272." (Doc. 1 at 9, paras. 53–54).  Taking these allegations as true and noting the breadth of the ADA's definition of "disability," the Court concludes that Smith has adequately pled that he is a qualified individual with a disability.

Smith asserts that the Defendants violated the ADA by failing to provide him a reasonable accommodation for his intellectual disability and that this failure to accommodate resulted in the denial of a public program or benefit.[5]  The ADA applies to public entities, 42 U.S.C. § 12131 *et seq.*, and state prisons are considered public entities for purposes of Title II of the ADA. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998) ("State prisons fall squarely within the statutory definition of 'public entity'. . . .").  To state a claim under Title II of the ADA, a plaintiff must allege:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami–Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007); *see also Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001).

---

[5] Smith reiterated at oral argument that his ADA claim is based on a failure to accommodate.

To the extent Smith attempts to plead that he "was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity," he fails to allege sufficient facts to support this allegation.  Smith does not allege with any specificity from which service, program, or activity he was excluded or in which program he was denied participation.  Without sufficient factual allegations, the Court is left to speculate from which service, program, or activity Smith contends he was excluded.  *Compare* (Doc. 1 at 9), *with Yeskey*, 524 U.S. at 210 (holding that a prison boot camp program qualified as a service, program, or activity for the purposes of Title II of the ADA); *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 773 (11th Cir. Nov. 10, 2020) (referring to livestreaming videos provided by the Florida Senate and House as "services" pursuant to Title II of the ADA); *Thompson v. Davis*, 295 F.3d 890, 899 (9th Cir. 2002) (holding that parole proceedings constitute an "activity" within the meaning of Title II of the ADA); *but see, e.g., Bircoll*, 480 F.3d at 1083 (reserving ruling on whether police conduct during an arrest is a service, activity, or program under Title II of the ADA); *Filush v. Town of Weston*, 266 F.Supp.2d 322 (D. Conn. 2003) (finding that personnel and equipment providing public education, transportation, or law enforcement are not services within Title II of the ADA).

The Complaint also lacks sufficient factual allegations that the Defendants denied Smith the opportunity to participate in or benefit from a service, program, or activity because of his intellectual disability.  Moreover, Smith does not allege facts that could establish that he was discriminated against by the Defendants.  Instead, Smith simply asserts a failure to accommodate claim.

11

Ultimately, Smith's ADA claim fails for a more fundamental reason: he fails to plead any facts that would demonstrate that he requested an accommodation for his intellectual disability.[6]  In his Complaint, Smith asserts that "Defendants' failure to provide reasonable accommodations for [him] in light of his disability violates his rights under the ADA." (Doc. 1 at 9, para. 55).  However, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made…." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *see also Malone v. Butler*, 2012 WL 4009341 (N.D. Ala. Sept. 7, 2012) (adopting Report and Recommendation without objection, *Malone v. Butler*, 2012 WL 4009345 (N.D. Ala. Aug. 20, 2012)) (applying this principle in a prison context).  "Only after the plaintiff makes a demand for accommodation and the defendant fails to provide the accommodation can the plaintiff prevail on his claim that the defendant discriminated against him by failing to provide a reasonable accommodation." *Malone*, 2012 WL 4009345, at *3.  Thus, because Smith proceeds under the theory that the Defendants failed to provide reasonable accommodations for his intellectual disability, he must allege that he requested a reasonable accommodation.  Smith makes no such allegation.  The absence of any allegation that Smith requested a reasonable accommodation, and that these Defendants failed to provide it, is fatal to his ADA claim. *Gaston,* 167 F.3d at 1364.  Accordingly, the Court concludes that Smith has failed to state a claim for relief under the ADA for which relief can be granted.

---

[6] While Smith argues that Senate Bill 272 did not provide for any accommodations for individuals with disabilities, he fails to allege that any such claim could properly be brought against these Defendants.

## VI.  CONCLUSION

For the reasons as stated, it is

ORDERED that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (doc. 10), is GRANTED, and this case is DISMISSED without prejudice.

A separate final judgment will be entered.

DONE this the 14th day of December, 2020.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE