IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE B. SMITH, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:19-cv-927-ECM |
| | ) | (WO) |
| | ) | |
| JEFFERSON DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Willie B. Smith, III ("Smith") is an Alabama death row inmate in the custody of the Alabama Department of Corrections ("ADOC").  On November 25, 2019, Smith filed a complaint pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act against the Commissioner of ADOC and the Warden of Holman Correctional Facility ("the Defendants") in their official capacities. (Doc. 1).  The Defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted. (Doc. 10).  The motion was fully briefed and orally argued to the Court. (Docs. 14, 15, 19, 20, and 27).  On December 1, 2020, the Alabama Supreme Court set the Plaintiff's execution date for February 11, 2021. (Doc. 17).

The Court granted the Defendants' motion to dismiss, dismissed the complaint without prejudice, and entered final judgment on December 14, 2020. (Docs. 25 and 26).  Thereafter, the Plaintiff filed a motion to vacate the judgment, (doc. 28), and a motion for

leave to file an amended complaint, (doc. 32).  On January 29, 2021, the Court granted the motions to vacate and to amend pursuant to Fed. R. Civ. P. 59(e) and 15 respectively. (Doc. 35).  The Plaintiff filed the operative complaint on the same day. (Doc. 36).

Smith brings two causes of action against the Defendants, claiming: (1) the Defendants violated his statutory rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*., ("ADA"); and (2) Alabama's three-drug, lethal injection protocol method of execution violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. (*Id.*).

Now pending before the Court is the Defendants' motion to dismiss the amended complaint (hereinafter "Complaint") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 37).  The motion is fully briefed and ripe for resolution, and the Court heard oral argument on the motion on February 8, 2021. For the following reasons, the Defendants' motion to dismiss is due to be GRANTED in part and DENIED in part.

## II.  BACKGROUND

At this stage of the litigation, the Court accepts the following well-pled facts as true.

### A.  The Plaintiff's History

Smith alleges that he is a qualified individual with a disability for the purposes of the ADA. (Doc. 36 at 6, para. 31).  He claims he has an intellectual disability that causes him to "suffer[] from extreme deficits in encoding new information such that the information would need to be repeated and rehearsed many times for him to encode that

same information on a level comparable to his peers." (*Id.* at 6, para. 29).[1]  The Complaint adds that "[n]europsychological testing place Mr. Smith in the moderately to severely impaired ranges in the ability to process and recall new information." (*Id.* at 7, para. 35).  Smith alleges that he reads at an eighth-grade reading level, at most. (*Id.*).

Smith has been in the custody of the ADOC since 1992, and he is currently in custody at William C. Holman Correctional Facility ("Holman"). (*Id.* at 1, para. 1; 7, para. 33).  His Complaint reads, "[a]t all times relevant, the State of Alabama was aware and acknowledged Mr. Smith's WAIS III full scale IQ score was 72. Likewise, the State was aware that Mr. Smith's Stanford-Binet 5th ed. full scale IQ score was 64." (*Id.* at 7, para. 33).  Moreover, Smith alleges that the ADOC's intake records from 1992 show that the intake officer noted Smith's comprehension issues: "[t]he intake officer recorded that even after explaining the purpose and subjects of the intake interview that he did not believe Mr. Smith understood." (*Id.* at 7, para. 34).

### B.  Alabama's Method of Execution and the Election Form

Lethal injection is the default method of execution in the State of Alabama. ALA. CODE § 15-18-82.1(a).  Alabama utilizes a three-drug lethal injection protocol. (Doc. 36 at 9, para. 42).  The protocol calls for sequential injections of midazolam, rocuronium bromide or vercuronium bromide, and potassium chloride in varying dosages. (*Id.* at 9, para. 44).  The State began using midazolam in 2014 when it substituted midazolam for another drug in the three-drug protocol. (*Id.* at 9, para. 45).

---

[1] References to page numbers are to those generated by the Court's electronic filing system.

On March 22, 2018, the Governor signed into law Senate Bill 272, which added nitrogen hypoxia as an alternative method of execution in Alabama.[2] (*Id.* at 3, para. 13); *see also* ALA. CODE § 15-18-82.1(b)(2).   The statute permits a death row inmate one opportunity to elect execution by nitrogen hypoxia. (*Id.* at 3, para. 16).   Otherwise, the inmate waives the right to elect the alternative method, (*id.* at 4, para. 17), and will be executed by lethal injection. (*Id.* at 4, para. 15).   The law became effective on June 1, 2018. (*Id*. at 4, para. 18).   Pursuant to the statute, Smith had 30 days, from June 1, 2018 until June 30, 2018, to elect nitrogen hypoxia as his method of execution. ALA. CODE § 15-18-82.1(b)(2).

On June 26, 2018, attorneys from the Federal Defenders met with their clients at Holman. (Doc. 36 at 4, para. 20).   The Federal Defenders notified their clients "of the change in the law, answer[ed] questions regarding nitrogen hypoxia, and provide[d] them with an election form . . . ." (*Id.* at 4, para. 19).   Smith was not represented by the Federal Defenders at that time. (*Id.* at 4, para. 20).

The ADOC "adopted, for its own use and distribution" the Federal Defenders' Election Form.[3] (*Id.* at 4, para. 21).   At some point after June 26, 2018, at the Warden's direction, ADOC staff distributed the Election Forms with envelopes to all prisoners on death row. (*Id.*at 4–5, paras. 21–23).   Prisoners were to sign and date the form and deliver it in the envelope to the Warden if they elected execution by nitrogen hypoxia. (*Id*. at 4,

---

[2] Electrocution is also an alternative method of execution in Alabama.

[3] Nowhere in the Complaint does the Plaintiff reveal the contents of the Election Form.   However, the Plaintiff asserts that "[t]he Election Form constituted written notification to the Warden that a death row prisoner elected to be executed by nitrogen hypoxia as required by the statute."  (Doc. 36 at 5, para. 25).

para. 22).  Smith did not submit the Election Form electing execution by nitrogen hypoxia within the prescribed period in 2018. (*Id.* at 7, para. 36).

Smith alleges that the provision of the Election Form by the ADOC constituted implementation of a "policy, protocol, and program" for the purposes of the ADA. (*Id.* at 4, para. 22).  Smith further alleges that the Election Form "scores a 15.6 grade level on the Flesch-Kincaid Readability Scale. This level is that of an academic paper[] and considered college level reading." (*Id.* at 7, para. 35).  Smith alleges that the Defendants did not provide reasonable accommodations to individuals with known disabilities and violated his rights under the ADA. (*Id.* at 5, para. 24; 12, para. 64).  On December 14, 2020, Smith's attorneys requested that the ADOC make an exception, as a reasonable accommodation, and allow Smith to opt-in to the nitrogen hypoxia method of execution outside of the statutorily prescribed time period, but his request was denied. (*Id.* at 12, para. 66).

### III.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 42 U.S.C. § 12133.

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### IV.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Id.* at 664.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See id.* at 679 (explaining, "only a complaint that states a plausible claim for relief survives a motion to dismiss").  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.*  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  It is the Plaintiff's responsibility to allege sufficient facts to support his claims. *Twombly*, 550 U.S. at 555.

# V.  DISCUSSION

In Count One, Smith claims that he is intellectually disabled, rendering him "unable to personally make the election in the manner specified in Senate Bill 272." (Doc. 36 at 12, para. 63).  Smith asserts that "Defendants' failure to provide reasonable accommodations for [him in light of his disability] violates his rights under the ADA." (*Id.* at 12, para. 64). In Count Two, Smith also alleges that "Alabama's method of execution by lethal injection violates [his] Eighth Amendment right to be free from cruel and unusual punishment because employing midazolam as the intended anesthetic creates a substantial risk of pain when compared to [his] alternative of nitrogen asphyxiation." (*Id.* at 13).

In their motion to dismiss, the Defendants assert that both claims should be dismissed because the Plaintiff fails to state claims for which relief may be granted. (Doc. 37).   The Court addresses each Count in turn.

## A.  Count One – Title II of the ADA

The Court first turns to Smith's failure to accommodate claim under Title II of the ADA.[4]  The Plaintiff requests that the Court declare the Defendants to be in violation of the ADA, order the Defendants to develop and implement reasonable accommodations, and enjoin his execution until he may make use of the reasonable accommodations developed by the Defendants. (Doc. 36 at 14–15).  The Defendants assert that Smith fails to state a claim for relief against them under Title II of the ADA.[5]  (Doc. 37 at 22).

---

[4] At oral argument, counsel for Smith confirmed that the ADA claim is for failure to accommodate.

[5] At oral argument, counsel for Smith clarified that the ADA claim against both Commissioner Dunn and Warden Raybon in their respective official capacities represents a claim against the ADOC.  While the

Accepting the well-pled facts as true, Smith has alleged facts sufficient to establish a prima facie case for a failure to accommodate under Title II of the ADA.  The ADA was enacted "for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The Act responds to an extensive history of discrimination in public services against individuals with disabilities. *Nat'l Assoc. of the Deaf v. Florida*, 980 F.3d 763, 773 (11th Cir. 2020).  Its provisions are to be construed broadly to protect those interests. *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996).  The statute provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  First, it is well-settled that prisons fall within the statutory definition of "public entity" under the ADA. *Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998).  Second, to state a claim under Title II of the ADA, the Plaintiff must allege facts sufficient to show (1) he has a disability, (2) he is a qualified individual under the statute, (3) he was denied access to a public benefit, and (4) that the denial was due to his disability. *Kornblau*, 86 F.3d at 194; *see also Goldberg v. Fla. Int'l Univ.*, 2020 WL 7703136, at *4 (11th Cir. Dec. 29, 2020); *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 (11th Cir. 2007).

---

Court believes it would be redundant to sue both Commissioner Dunn and Warden Raybon in their official capacities in this situation, the Defendants have not requested dismissal of either individual party on this basis.

### 1. Disability

Smith has pled facts sufficient to establish that he has a disability for the purposes of the ADA.  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).  The State asserts that "Smith is not intellectually disabled." (Doc. 37 at 30).  However, Smith alleges that "[n]europsychological testing places Mr. Smith in the moderately to severely impaired ranges in the ability to process and recall new information;" that he "suffers from extreme deficits in encoding new information such that the information would need to be repeated and rehearsed many times for him to encode that same information on a level comparable to his peers;" and that his reading level is, at most, at an eighth-grade level. (Doc. 36 at 6–7, paras. 35–36).  The Court accepts these facts as true and finds that Smith has sufficiently pled a disability under the broadly construed ADA.

### 2. Qualified individual

Smith has also pled sufficient facts to show he is a qualified individual with a disability.  Under Title II, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  At some point, prison officials passed

out the Election Form at issue to all death row inmates.  And, as an inmate on death row, Smith received the Election Form during 2018. (Doc. 36 at 5, para. 24).  These facts plausibly allege that Smith meets the essential eligibility requirements of the alleged program or activity provided by the Defendants.

But part of establishing that Smith is a qualified individual with a disability includes showing that some form of accommodation exists that would make him eligible for the receipt of benefits.  For example, the Eleventh Circuit recently determined that a medical student who made accommodation requests of his post-secondary school was not a "qualified individual" under Title II. *Goldberg*, 2020 WL 7703136, at *4.  The Court held that, despite having timely made accommodation requests, the requested accommodations were not *reasonable*.  In fact, the Court held there was no accommodation that could have made the student a qualified individual under the ADA for the purposes of his post-secondary education program. *Id.* at *5 ("But the larger flaw in Goldberg's case is that, even if he could have been qualified with the right accommodations, he did not meet his burden to identify a reasonable accommodation that would have allowed him to meet the standards of the medical school program despite his disability.").  Unlike the plaintiff in *Goldberg* who lost on a motion for summary judgment, Smith must allege a reasonable accommodation that makes him qualified under the less exacting motion to dismiss standard.  Smith alleges that "[s]uch reasonable accommodations may have included, but are not limited to, use of simple language, a comprehension check, additional time, or assistive technology." (Doc. 36 at 7-8, para. 36).  The Court accepts as true the facts pled

by Smith in the Complaint, which are sufficient to state a plausible claim that he is a qualified individual.

### 3. Exclusion from or denial of the benefits of services, programs, or activities

Smith has alleged enough facts to plausibly show that he was denied access to a public benefit. A "public benefit" is a "service, program, or activity" under the ADA. 42 U.S.C. § 12132. The Department of Justice's regulations explain that Title II applies to "all services, programs, and activities provided or made available by public entities." 28 C.F.R. § 35.102(a). Courts across the country recognize the term "services, programs, or activities" to be a "catch-all phrase." *See Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998) (citing *Innovative Health Sys.*, *Inc. v. City of White Plains*, 117 F.3d 37, 44–45 (2d Cir.1997) (overruled on other grounds)); *Am. Council of Blind of N.Y., Inc. v. City of New York*, 2020 WL 6151251, at *11 (S.D. N.Y. Oct. 20, 2020); *Clifton v. Ga. Merit Sys.*, 478 F.Supp.2d 1356, 1365 (N.D. Ga. 2007) (disputing but applying the "catch-all" analysis to the phrase "services, programs, or activities"). Indeed, courts have found the existence of a service, program, or activity in actions by public entities ranging from weddings at municipal courts, *Soto v. City of Newark*, 72 F.Supp.2d 489, 494 (D. N.J. 1999), to a prisoner's access to telephone privileges, *Clarkson v. Coughlin*, 898 F.Supp. 1019, 1046 (S.D. N.Y. 1995).

An individual may be excluded from a public benefit not just when prevented from enjoying the benefit, but when it is not "readily accessible." *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001). "However, mere difficulty in accessing a benefit is not, by itself, a violation of the ADA." *People First of Ala. v. Merrill*, 467 F.Supp.3d 1179, 1216 (S.D.

Ala. June 15, 2020).  Plaintiffs alleging a failure to accommodate must demonstrate that the failure constituted an injury. *Id.*

Smith seems to suggest in his Complaint that he was denied access to two benefits: use of the Election Form and the opportunity to elect nitrogen hypoxia as a method of execution. *Compare* (Doc. 36 at 4, para. 22) ("The Warden at Holman implemented a policy, protocol, and program whereby corrections staff were instructed to distribute the Election Forms along with an envelope to all death row prisoners."), *with* (*id.* at 13, para. 67) (describing the public benefit in question as "the benefit of avoiding a substantially painful execution via lethal injection").  At oral argument, counsel for Smith clarified that the service at issue relates to the Election Form, not the statutory election process.  Indeed, the ability to elect nitrogen hypoxia is not a service offered by these Defendants—the election is governed by statute. *See* ALA. CODE § 15-18-82.1(b)(2) ("[T]he election must be made and delivered to the warden within 30 days of that date [June 1, 2018] . . . .").  The Court assumes without finding that the provision of the Election Form could constitute a service under the ADA.  Smith presents sufficient facts to plausibly allege that he was excluded from that public service.

### 4.  Exclusion or denial based on a disability

To state a prima facie case of a Title II violation, a plaintiff must allege facts sufficient to show that the plaintiff lacks "meaningful access" to an entitled public benefit *because of* a disability. *Alexander v. Choate*, 469 U.S. 287, 301 (1985).  And when an individual is unable to access services or benefits because of a disability, the ADA requires that the public entity provide reasonable accommodations to ensure that individual is

permitted access to the same benefits and services as others. *Arenas v. Ga. Dep't of Corrs.*, 2020 WL 1849362, at \*11 (S.D. Ga. Apr. 13, 2020).   A plaintiff may establish discrimination under the ADA by showing that a public entity failed to provide reasonable accommodations. *Id.* (citing *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009)). A defendant's duty to provide a reasonable accommodation is not usually triggered until the plaintiff makes a specific demand for accommodation. *Rylee*, 316 F. App'x at 906 (citing *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999)).  The ADA does not require public entities to "guess at what accommodation they should provide." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).  However, an explicit request for a reasonable accommodation may sometimes be unnecessary where "the need for an accommodation is obvious." *Arenas*, 2020 WL 1849362, at \*12 (citing *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1327 n.33 (N.D. Ga. 2017)).

Therefore, in a failure to accommodate case, the plaintiff must show that an accommodation was requested or the need for one was obvious, and the public entity failed to provide a reasonable accommodation.  Smith does not plead any facts to show that he requested an accommodation when the Election Form was distributed in 2018.  Instead, he asserts that his disability was known and his "need for an accommodation was obvious." (Doc. 36 at 7, para. 33).  A plaintiff does not have to request an accommodation where the disability, its limitations, and the plaintiff's necessary reasonable accommodations are "*open, obvious, and apparent*." *Arenas*, 2020 WL 1849362, at \*12 (emphasis added). Further, a plaintiff does not have to request an accommodation if "the defendant otherwise had knowledge of an individual's disability *and needs* but took no action." *Nattiel v. Fla.*

*Dep't of Corrs.*, 2017 WL 5774143, at *1 (N.D. Fla. Nov. 28, 2017) (emphasis added) (quoting *McCoy v. Tex. Dep't of Crim. Just.*, 2006 WL 2331055, at *7 (S.D. Tex. 2006)). Thus, not only must the disability be obvious, but the Plaintiff must show that his "need" resulting from the disability—the necessary reasonable accommodation—was obvious as well.

The Plaintiff alleges he had a "known and obvious disability such that it would be very difficult for him to participate, without accommodation, in age appropriate activities." (Doc. 36 at 8, para. 37). To support this assertion, the Plaintiff alleges that at "all relevant times" the ADOC knew of his low IQ, and that an intake record from 1992 showed that he struggled with comprehension and understanding. (*Id.* at 7, paras. 33–34). The Plaintiff has alleged facts which could show that Defendants had notice of his disability and need for accommodation.

Thus, Smith has plead sufficient facts to state a claim for failure to accommodate under Title II of the ADA. The Defendants' motion to dismiss is due to be denied as to Count One of the Complaint.

### B. Count Two – Eighth Amendment Lethal Injection Claim

The Court now turns to Smith's Eighth Amendment claim pursuant to 42 U.S.C. § 1983. Smith is scheduled to be executed by lethal injection on February 11, 2021. (Doc. 17). According to Smith, Alabama's three-drug lethal injection protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment. (Doc. 36 at 13). Specifically, he challenges the use of midazolam in the three-drug protocol. (*Id.* at 14, paras. 73-74).

The Defendants assert that Smith's Eighth Amendment claim is barred by the statute of limitations because he did not bring his challenge to the lethal injection protocol within two years of its having undergone a substantial change (the substitution of midazolam) in 2014. (Doc. 37 at 30).  Smith responds that the Alabama tolling statute prevents his claim from being time-barred because of his intellectual disability. (Doc. 41 at 13).  Alternatively, he suggests that the changing of the protocol in response to the COVID-19 pandemic is a substantial change to Alabama's execution protocol, resetting the statute of limitations. (*Id.*).

"[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Secs., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted).  If Smith's Eighth Amendment claim is time-barred, he has failed "to state a claim on which relief may be granted."[6] *Id.*; *see also West v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1289, 1298 (11th Cir. 2017) ("A complaint must also be dismissed if it is time-

---

[6] Smith makes the claim that the Defendants' statute of limitations argument is an affirmative defense, which "is not properly raised in a motion to dismiss." (Doc. 41 at 13) (citing *Quiller v. Barclays Am./Credit Inc.*, 727 F.2d 1067 (11th Cir. 1984)).  He is correct that in the Eleventh Circuit, "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss."  However, the same panel also recognized "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller*, 727 F.2d at 1069; *see also La Grasta*, 358 F.3d at 845 ("Not surprisingly, our cases say that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred.").  Here, the statute of limitation is appropriately raised.  As discussed further below, it is apparent from the face of the complaint that Smith's Eighth Amendment claim is time-barred.

 In sum, Smith does not point to, and this Court is unable to locate, any case law that would preclude the Defendants from raising this affirmative defense on a motion to dismiss.

barred under the applicable statute of limitations."). For the following reasons, the Court finds that Smith's Eighth Amendment claim is barred by the statute of limitations.

### 1. The Time of Accrual

To determine the statute of limitations for a claim brought pursuant to § 1983, the Court looks to the law of the state where the claim accrued. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the statute of limitations applicable to personal injury actions is two years. *Id.*; *see also* ALA. CODE § 6-2-38. Therefore, for Smith's Eighth Amendment claim to be timely, it must have been brought within two years of its accrual.

An Eighth Amendment method of execution claim "accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *West,* 869 F.3d at 1298; *McNair,* 515 F.3d at 1174. "However, a substantial change to a state's lethal injection protocol doesn't create an open season on all aspects of the state's protocol." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 873 (11th Cir. 2017). "[A] claim that accrues by virtue of a substantial change in a state's execution protocol is *limited to the particular part* of the protocol that changed." *Id.* at 873 (emphasis added) (quoting *Gissendaner v. Comm'r, Ga. Dep't of Corrs.*, 779 F.3d 1275, 1280–81 (11th Cir. 2015)). Thus, "a substantial change to one aspect of a state's execution protocol does not allow a prisoner

whose complaint would otherwise be time-barred to make a wholesale challenge to the State's protocol." *Gissendaner*, 779 F.3d at 1281 (internal quotations omitted).

Lethal injection using a three-drug protocol has been the primary method of execution in Alabama since 2002. *Boyd*, 856 F.3d at 874; *see also* ALA. CODE § 15-18-82.1(a). As a death row inmate since 1992, Smith has been subject to the three-drug lethal injection protocol since the change in 2002. On September 10, 2014, the ADOC substituted midazolam for pentobarbital as the first drug administered in the lethal injection protocol. Smith, therefore, became subject to execution by the three-drug protocol with midazolam on that date.

Assuming without finding that the change to midazolam constitutes "a new or substantially changed execution protocol[,]"[7] Smith's statute of limitations would have started to run on September 10, 2014 when he became subject to lethal injection using midazolam. "[A] federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *McNair*, 515 F.3d at 1174 (quoting *Corn v. City of Lauderdale Lakes,* 904 F.2d 585, 588 (11th Cir. 1990)).

Here, Smith is challenging the State's three drug protocol using midazolam—a method of execution which has not changed since 2014. For the statute of limitations to reset on method of execution cases challenging Alabama's lethal injection method, Alabama must make significant alteration to Smith's specific method of execution. *See*

---

[7] Although Smith is challenging the use of midazolam in the lethal injection protocol, he alleges no facts in his Complaint that the change to midazolam constitutes a substantial change to Alabama's execution protocol. *West*, 869 F.3d at 1301 ("[T]he prisoner must additionally show that the substitution of one drug for another represents a 'substantial change' in protocol.").

*West*, 869 F.3d at 1301; *Boyd*, 856 F.3d at 873; *Gissendaner*, 779 F.3d at 1280; *McNair*, 515 F.3d at 1174.   The three-drug lethal injection protocol Smith now challenges was introduced in 2014.   Therefore, the statute of limitations would have expired in 2016. Smith filed this § 1983 action on November 25, 2019, long after the expiration of the two-year statute of limitations.

In the alternative, Smith implies that the recent changes to the execution protocol in response to the COVID-19 pandemic restarted the statute of limitations.[8] (Doc. 41 at 14). He claims that recent COVID-19-related precautions constitute "specific, substantial, and personal" changes to the execution protocol. (*Id.*).   Even assuming for the sake of argument that COVID-related precautions constitute substantial changes, Smith's argument fails because "a claim that accrues by virtue of a substantial change in a state's execution protocol is *limited to the particular part* of the protocol that changed." *Boyd*, 856 F.3d at 873 (emphasis added).   Smith does not raise any challenge to the execution protocol as it relates to COVID-19 precautions.

### 2.   *Alabama's Tolling Provision*

Notwithstanding the statute of limitations, Smith alleges that his claim is tolled because he suffers from a mental disability governed by ALA. CODE § 6-2-8. (Doc. 36 at 9, para. 45).   He asserts that at the time midazolam became the substitute for pentobarbital in 2014, he "was (and is) suffering from a disability governed by Ala. Stat. §6-2-8 (sic)" and that Alabama has a "generous tolling provision for individuals suffering from intellectual

---

[8] As the Plaintiff notes in his response, he has filed another lawsuit challenging the new COVID-19 safety protocol. (Doc. 41 at 14, n.26) (citing "DE 1, 21-CV-00099-RAH (M. D. Ala., February 2, 2021)").

disabilities."[9] (*Id.*) (citing *Warren by & through Robinson v. Ala. Dep't of Mental Health*, 2017 WL 1282244, (N.D. Ala. Apr. 6, 2017)).

As a preliminary matter, there are no federal tolling rules for individual § 1983 actions. Instead, federal courts draw on the state's statute of limitations and tolling rules unless those rules are inconsistent with the policies of § 1983. *Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980).

Alabama's tolling statute allows the statute of limitations to be suspended when a plaintiff's right accrues while the plaintiff is "insane," and then commence again upon "the termination of the disability." ALA. CODE § 6-2-8. The statute reads, in pertinent part:

> [i]f anyone entitled to commence [a civil action] . . . is, at the time the right accrues, below the age of 19 years, or insane, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action. . . . No disability shall extend the period of limitations so as to allow an action to be commenced . . . after the lapse of 20 years from the time the claim or right accrued.

*Id.* Importantly, the term "insane" is distinct from an intellectual "disability" as defined by the ADA. The Alabama Code explains, "the words 'lunatic' or 'insane' or 'non compos mentis' include all persons of unsound mind." ALA. CODE § 1-1-1(5). The Plaintiff bears the burden of establishing that he was "insane" at the relevant time. *McCullough v. City of Montgomery*, 2020 WL 7647634, at *8 (M.D. Ala. Dec. 23, 2020) (citing *Street v. Shadix*, 73 So. 73, 74 (Ala. 1916)).

---

[9] The Defendants wholly failed to address Smith's invocation of Alabama's tolling statute in their Motion to Dismiss. However, the parties were heard on this issue at oral argument. Further, the application of the tolling statute here involves a question of law, not of fact.

Alabama courts provide little guidance on what constitutes insanity for the purposes of the tolling statute, but a recent case from this Court is instructive.   In *McCullough v. City of Montgomery*, *supra.*, the Court considered whether an individual with an intellectual disability would qualify as "insane" under the tolling statute.  Recognizing that this question implicates state law, the Court interpreted the statute as the state's highest court would. *McCullough,* 2020 WL 7647634, at *9 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)).  The Alabama Supreme Court interprets statutes to "ascertain and give effect to the intent of the legislature in enacting the statute." *Id.* (citing *Ex parte Dow AgroSciences LLC*, 299 So. 3d 952, 958 (Ala. 2020)).  So "words used in statute must be given their natural, plain, ordinary, and commonly understood meaning . . . ." *Id.*   In contrast, legal terms are "are presumed to have been used in their legal sense." *Id*.

Thus, to determine the meaning of "insanity," the Court must look to the contemporary meaning of the word "as the best evidence of the legislative intent." *Id.* The Alabama legislature codified the relevant language in 1867 and 1876 and added clarifying language in 1886 and 1897 that "insane" meant a "person of unsound mind." *Id.* (citing Ala. Code § 3236 (1876); Ala. Code § 1 (1897)).   The Court concluded that the legislature used "insane" as a legal term because the definition of insanity provision refers to an "unsound mind" and compares insanity to "non compos mentis." *Id*.  Therefore, the Court must look to the legal meaning of "insanity" for guidance.  In the late nineteenth century, legally insanity was understood in civil actions to turn on the capacity to contract. *Id*. (citing *Cotton v. Ulmer*, 45 Ala. 378, 396–97 (1871); *Insanity*, Bouvier's Law Dictionary, 1056–57 (Francis Rawles ed., 1897)).  Consequently, at the time of the

writing of the statute, those found to be "insane" were those who could not act for themselves and thus needed a next friend or guardian to act for them to sue. *Id*. (citing *West v. West*, 7 So. 830 (Ala. 1890)).

Further, the case the Plaintiff cites for the notion of Alabama's "generous tolling provisions for individuals suffering from intellectual disabilities" is inapposite to the case at hand. *See Warren*, 2017 WL 1282244, at *3. In that case, the defendants did not contest that the plaintiff, who brought the case through a next friend and legal guardian, was eligible for tolling under Alabama law. *Id.* at *3. Although the court in *Warren* applied Alabama's tolling statute to "individuals suffering from intellectual disabilities," the court did not define "intellectual disabilities" and did not point to any Alabama case law to show that having an "intellectual disability" means a person is "insane" under state law. The *Warren* court relied on *Emerson v. S. Ry. Co.*, which recognized that Ala. Code § 6-2-8 "demonstrates legislative response to the need to protect individuals suffering under certain disabilities." *Id.* at *3 (citing 404 So. 2d 576, 578 (Ala. 1981)). However, in *Emerson,* the Alabama Supreme Court explained that it "clearly adhered to the general rule . . . tolling the statute of limitations in favor of infants and incompetents"—"incompetent" meaning those who are "non compos mentis." *Emerson*, 404 So. 2d at 578. Therefore, *Warren* does not stand for the proposition that the tolling provision in Ala. Code § 6-2-8 applies to all forms of intellectual disability.[10]

---

[10] At oral argument, the Plaintiff conceded that the only legal authority for his invocation of tolling is *Warren*, *supra.*, and that if *Warren* was distinguishable, his § 1983 method of execution claim is barred by the statute of limitations.

The Plaintiff's claim that he "is an individual suffering from a disability governed by ALA. CODE § 6-2-8," (doc. 36 at 9, para. 45), is a legal assertion, not a factual one. Accepting the well-pled factual allegations in the Complaint as true and construing the facts in the light most favorable to the Plaintiff, the Court finds that the tolling provision of ALA. CODE § 6-2-8 does not apply.  Notably, the Plaintiff brings this claim himself— not through a next friend or legal guardian.  Accordingly, he implicitly concedes that he has the capacity to contract with his attorneys.  Further, his attorneys do not classify Smith as having been "insane," of an "unsound mind," or incapable of entering a contract in 2014 *and* throughout the two-year statute of limitations window.  Therefore, while Smith alleges an "intellectual disability" in his Complaint, he does not plead any facts that would establish that he is within the class of individuals protected under Alabama's tolling provision.

Smith offers only conclusory statements in his Complaint as to application of the tolling statute.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678.  Smith's Eighth Amendment claim is time-barred, and the Defendants' motion to dismiss is due to be GRANTED as to Count Two of the Complaint.

## VI.  CONCLUSION

For the reasons discussed, it is hereby

ORDERED that the Motion to Dismiss filed by Defendants Dunn and Raybon, (doc. 37), is GRANTED in part and DENIED in part as follows:

1.      The Motion is DENIED as to Count One (ADA) of the Complaint.

2.      The Motion is GRANTED as to Count Two of the Complaint (Eighth Amendment method of execution), and Count Two is DISMISSED with prejudice.

DONE this the 8th day of February, 2021.

           /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE