IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIE B. SMITH, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:19-cv-927-ECM |
| ) | [WO] |
| JEFFERSON S. DUNN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

This is a civil action brought pursuant to the Americans with Disabilities Act ("ADA") by an inmate on Alabama's death row. The case arises out of state prison officials' distribution of a nitrogen hypoxia election form to the Plaintiff and whether such distribution is a service, program, or activity of which the Plaintiff was denied the benefits because of his disability in violation of federal law. Material to the Defendants' defense was their position that the distribution of the forms was not a service, program, or activity because then-Warden Cynthia Stewart decided on her own to distribute the forms to death-row inmates as a "courtesy." However, the Defendants now admit that the factual contention upon which they based their position and subsequent arguments is false.

This matter is before the Court *sua sponte* after the Court became aware of information that revealed the Defendants "asserted repeatedly a verifiable fact without

evidentiary support." (Doc. 115 at 1). On August 16, 2021, the Court ordered the Defendants to "show cause why the Alabama Attorney General Steve Marshall, Jefferson Dunn, and Terry Raybon should not be sanctioned pursuant to Fed. R. Civ. P. 11(b) and (c), 28 U.S.C. § 1927, or under the Court's inherent power to assess sanctions for bad faith conduct or conduct that abuses the judicial process." (*Id.*). On August 24, 2021, the Defendants filed their response to the Court's show cause order. (Doc. 126). The Court held a hearing on September 1, 2021, and the matter is ripe for adjudication. For the following reasons, the Court concludes that Assistant Attorney General Lauren Simpson, acting on behalf of the Office of the Alabama Attorney General, violated Rule 11 and that sanctions are appropriate.

## II. BACKGROUND

Plaintiff Willie B. Smith, III ("Plaintiff" or "Smith") is a death-row inmate in the custody of the Alabama Department of Corrections ("ADOC") at Holman Correctional Facility ("Holman"). In his amended complaint (the operative complaint), the Plaintiff brings a claim pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*,[1] against Defendants Jefferson S. Dunn, in his official capacity as the Commissioner of the ADOC ("Commissioner Dunn"), and Terry Raybon, in his official capacity as the Warden of Holman ("Warden Raybon").[2] (Doc. 36). The Plaintiff's ADA claim centers

---

[1] Title II of the ADA states in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[2] The Plaintiff also brought an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 challenging his method of execution. However, this Court previously dismissed the Eighth Amendment claim with prejudice. (Doc. 46 at 23).

on ADOC officials' provision to him of an "Election Form" by which the Plaintiff could elect nitrogen hypoxia as his method of execution in place of lethal injection, Alabama's default method of execution.[3] The Election Form was created by the Federal Defenders for the Middle District of Alabama's Capital Habeas Unit ("Federal Defenders"), and the Federal Defenders met with and gave a copy of the form to each of their clients at Holman on June 26, 2018. (Doc. 36 at 4, paras. 20–21). In his amended complaint, the Plaintiff alleges that "[a]t some point . . . the ADOC adopted, for its own use and distribution, the Election Form created by the Federal Defenders." (*Id.* at 4, para. 21). The Plaintiff also alleges that "[t]he Warden at Holman implemented a policy, protocol, and program whereby corrections staff were instructed to distribute the Election Forms along with an envelope to all death row prisoners." (*Id.* at 4, para. 22). The Plaintiff received an Election Form but did not make a timely election.[4] The Plaintiff claims that the Defendants violated his rights under the ADA by failing to provide him a reasonable accommodation for his cognitive deficiencies with respect to the Election Form, which he says prevented him from making a timely election. (*Id.* at 6, para. 29; 7–8, para. 36; 12, paras. 63–64).

---

[3] On March 22, 2018, Governor Kay Ivey signed Senate Bill 272, amending Alabama Code § 15-18-82.1 to authorize the use of nitrogen hypoxia as a method of execution. Under the amended statute, "unless the person affirmatively elects to be executed by . . . nitrogen hypoxia," a sentence of death "shall be executed by lethal injection." Ala. Code § 15-18-82.1(a). The nitrogen hypoxia election "is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death." *Id.* § 15-18-82.1(b)(2). If the certificate of judgment was issued "before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date." *Id.*

[4] The deadline for the Plaintiff to elect nitrogen hypoxia was July 2, 2018. *See* Ala. Code § 15-18-82.1(b)(2).

3

The Defendants repeatedly asserted in this litigation that then-Warden Cynthia Stewart decided on her own to distribute the Election Forms to Holman death-row inmates as a "courtesy." In their motion to dismiss the Plaintiff's amended complaint, filed on February 1, 2021, the Defendants state in relevant part that "Cynthia Stewart, then the Warden of Holman Correctional Facility, obtained" the Election Form, and "[a]s *a courtesy* to the inmates at Holman, she directed Captain Jeff Emberton to give every death-row inmate a copy of the [Election] [F]orm and an envelope in which he could return it to the warden, should he decide to make the election." (Doc. 37 at 16) (emphasis added). The motion further states: "Simply passing out a form to inmates as a courtesy . . . did not establish a program under the ADA." (*Id.* at 25). The motion was signed and submitted by the attorney of record, Assistant Attorney General Lauren Simpson ("Simpson"), on behalf of Alabama Attorney General Steve Marshall. (*Id.* at 34).

On February 8, 2021, this Court heard oral argument on the Defendants' motion to dismiss (doc. 37) and the Plaintiff's motion for stay of execution (doc. 42). As the Defendants acknowledge, "[o]ne of the primary issues addressed during that hearing was whether Smith had been denied receipt of a benefit or service under the ADA because he allegedly could not understand the election form." (Doc. 126 at 19). During the hearing, Simpson stated that "the warden [Cynthia Stewart] . . . took it upon herself to make sure that every inmate had a copy" of the Election Form. (Doc. 126-2 at 29:15–17). Later, the following colloquy took place between the Court and Simpson:

> THE COURT: Ms. Simpson, I don't see anything in the record that indicates that there was any deliberative process by the DOC before it passed out a form that had legalese written on it.

> MS. SIMPSON: No, Your Honor. My understanding of the situation is the warden took it upon herself and did this without consultation with DOC legal. She simply saw the form that came into the prison, saw it was there, and decided to pass it out to every death-row inmate.

(*Id.* at 62:24–25, 63:1–6).

On February 25, 2021, the Defendants filed an answer to the Plaintiff's amended complaint. (Doc. 58). In the answer, the Defendants deny the allegations in Paragraph 21 of the Plaintiff's amended complaint and state in relevant part: "Cynthia Stewart, who was then the Warden of Holman Correctional Facility, directed *on her own initiative* that a copy of the form be passed out to all death row inmates at the facility." (*Id.* at 4, para. 21) (emphasis added). In response to the allegations in Paragraph 22 of the Plaintiff's amended complaint, the Defendants "deny that Warden Stewart implemented a policy, protocol, or program." (*Id.* at 4, para. 22). The answer was signed and submitted by Simpson on behalf of Alabama Attorney General Steve Marshall. (*Id.* at 9–10).

On June 2, 2021, the Defendants filed a "Notice to the Court" to "clarify the record as to Defendants' knowledge of how the election form came to be distributed to Plaintiff." (Doc. 69 at 3). The Notice states that sometime between July 2018 and late January 2019, the Office of the Attorney General "was made aware that Ms. Stewart had ordered that the [election] forms be distributed." (*Id.* at 2, para. 2). It further states that when "the Office was notified of the election forms' distribution, the Office believed, based upon representations from the ADOC, that Ms. Stewart had made the decision to pass out the forms herself," and that "[t]he Office has espoused this position on Defendants' behalf since 2019." (*Id.* at 2, para. 3). The Notice then states that, during her May 26, 2021

5

deposition in the present litigation, Cynthia Stewart testified that "in June 2018, she was instructed to have the forms passed out to all death row inmates." (*Id.* at 2, para. 4). Although she could not recall who gave her the instruction, she acknowledged it would have been someone above her in the chain of command. (Doc. 74-1 at 11–12).

On August 16, 2021, the Court entered an Order concerning the Notice the Defendants had filed, stating: "It appears to the Court from this notice and from the record that the Defendants asserted repeatedly a verifiable fact without evidentiary support." (Doc. 115 at 1). The Court ordered the Defendants to "show cause why the Alabama Attorney General Steve Marshall, Jefferson Dunn, and Terry Raybon should not be sanctioned pursuant to Fed. R. Civ. P. 11(b) and (c), 28 U.S.C. § 1927, or under the Court's inherent power to assess sanctions for bad faith conduct or conduct that abuses the judicial process." (*Id.*). The Court also set a hearing for September 1, 2021. (*Id.* at 2).

On August 24, 2021, the Defendants filed their response to the Court's show cause order. (Doc. 126). The response states that at the end of January 2019, "undersigned counsel"—Simpson—learned from ADOC that Cynthia Stewart "had had an election form passed out to all of the death row inmates" at Holman. (*Id.* at 4). The response goes on to state that "[t]his information came as a surprise to the undersigned, given the ADOC's firm decision not to pass out a notice or election form in June 2018." (*Id.*). The response then recounts certain steps taken by Simpson after receiving this information, namely procuring an affidavit from Captain Jeff Emberton. (*Id.* at 5). Simpson did not, however, contact Cynthia Stewart to discuss the matter. The Defendants' response further states that Simpson first made the assertion that Cynthia Stewart decided on her own to distribute the

6

forms in early 2019 in separate litigation involving another death-row inmate. Simpson made this assertion based on the following three facts: (1) ADOC had made a previous decision to not distribute a notice form concerning the statutory election period; (2) ADOC Legal was "surprised" to learn that the form had been distributed; and (3) Cynthia Stewart stated in interrogatory responses during separate litigation that she "directed Captain Jeff Emberton to deliver nitrogen hypoxia election forms to all death row inmates at Holman Correctional Facility." (*Id.* at 7, 10). The assertion was not, however, based on any conversation or communication with Cynthia Stewart. Finally, the Defendants' response states that Simpson made this assertion in the present litigation based on her earlier investigation and that she had "no reason to believe" the information was inaccurate. (*Id.* at 20).

### III. LEGAL STANDARD

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ." FED. R. CIV. P. 11(b). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The objective standard for testing conduct under Rule 11 is 'reasonableness under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (citation omitted). For the Court to impose Rule 11

7

sanctions *sua sponte*, the offending conduct must be "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255–56 (11th Cir. 2003).

## IV. DISCUSSION

The Court must determine whether the Defendants, their counsel, or both should be sanctioned based on the repeated assertion that then-Warden Cynthia Stewart decided on her own to distribute the Election Forms, and if so, what sanction(s) should be imposed.

The Court will first address the propriety of sanctions against Commissioner Dunn and Warden Raybon. Sanctions against the client are proper "where the client has made a 'knowing factual misrepresentation' or is the 'mastermind' behind the frivolous case." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 2021 WL 3627604, at *8 (11th Cir. Aug. 17, 2021) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). Based on the Defendants' response to the Court's show cause order (doc. 126) and Simpson's statements at the September 1, 2021 hearing, the Court finds that neither Commissioner Dunn nor Warden Raybon made a factual misrepresentation, and the Court further finds that neither was the "mastermind" behind the repeated assertion that Cynthia Stewart acted on her own initiative. Upon consideration of the response and counsel's representation at the hearing, the Court finds that Rule 11 sanctions against Commissioner Dunn or Warden Raybon are not appropriate.

### A.   Whether the Conduct Violates Rule 11

The Court concludes that the inquiry into the factual contention that Cynthia Stewart on her own decided to distribute the Election Forms was not "reasonable under the

8

circumstances" and warrants Rule 11 sanctions. As noted, Simpson stated that, in early 2019, she first made the assertion that Cynthia Stewart decided on her own to distribute the forms based on the following three facts: (1) ADOC had decided not to distribute a notice form concerning the statutory election period; (2) ADOC Legal was "surprised" the form had been distributed; and (3) Cynthia Stewart stated in interrogatory responses that she directed Captain Emberton to deliver the forms to Holman death-row inmates. (Doc. 126 at 7, 10). From these three facts, Simpson assumed an additional, unverified "fact" that Cynthia Stewart made the decision on her own without any consultation or direction from anyone at the ADOC. None of the three facts mentioned above constitute evidentiary support for the factual contention that Cynthia Stewart decided on her own to distribute the forms. Instead, this asserted "fact" was an assumption[5] based on a limited inquiry that did not include talking to Cynthia Stewart, yet counsel presented it to the Court as though it were a verified fact. Counsel presented that "fact" three times in this case: in the motion to dismiss filed on February 1, 2021 (doc. 37 at 15–16); at oral argument on February 8, 2021; and in the answer filed on February 25, 2021 (doc. 58 at 4). Simpson, on behalf of Attorney General Steve Marshall, "sign[ed]" and "submit[ed]" the answer (doc. 37 at 34) and motion to dismiss (doc. 58 at 9–10). *See* FED. R. CIV. P. 11(b).

Simpson admits that she has asserted this "fact" repeatedly in litigation before this Court since 2019, despite never contacting Cynthia Stewart to discuss the matter or ask her if she actually had decided on her own to distribute the Election Forms. It would have

---

[5] At the September 1, 2021 hearing, Simpson herself characterized it as an assumption. (Doc. 146 at 7:3, 13:7).

9

taken little time and effort to contact Cynthia Stewart, who remains an employee of the ADOC, and verify what happened.  Counsel identified no other actions undertaken to inquire about this "fact" before asserting it in the answer, motion to dismiss, and at oral argument in this case.  Indeed, Simpson states that she made these representations to the Court based on her earlier investigation from 2019 in different litigation. (Doc. 126 at 20).  The Court finds that in this case, counsel conducted *no* inquiry into whether the factual contention had evidentiary support as required by FED. R. CIV. P. 11(b)(3).

To make matters worse, part of the Defendants' defense to the Plaintiff's ADA claim depended on this "fact."  Specifically, the Defendants have argued that they did not provide a service, program, or activity of which the Plaintiff was denied a benefit because Cynthia Stewart decided on her own to distribute the forms to inmates as a "courtesy." (*See, e.g.*, Doc. 37 at 16, 25).  Asserting a legal defense—in a case involving a death-row inmate—based on a factual contention that lacked evidentiary support, and in fact lacked the support of any contemporaneous inquiry, was not reasonable under the circumstances.  Nor was it reasonable to believe at the time the filings were submitted, *see Baker*, 158 F.3d at 524, since the factual contention was nothing more than an assumption.  And counsel's responsibility to conduct a reasonable inquiry into the facts was heightened due to the serious nature of this case. *Cf. Byrne*, 261 F.3d at 1115 ("Byrne's responsibility to act with professional judgment only after a thorough, reasonable, and objective investigation of the claims at issue was heightened . . . because of the extraordinary nature of the RICO allegations in this case.") (affirming district court's award of Rule 11 sanctions).  Under the circumstances, the failure to conduct any inquiry was more than negligent—it was

reckless. Thus, the inquiry was not "reasonable under the circumstances" as required by Rule 11.

Simpson contends that she did no further investigation into the matter in early 2019 (when she first learned that the forms were distributed) because she was in the midst of high-stakes, fast-moving litigation involving a different death-row inmate; and because at that time it did not matter in that litigation *who* ordered the forms' distribution, only that the forms were distributed. However, even assuming she is correct, that does not mean the inquiry was reasonable in the present litigation. In fact, the Defendants contend that it *does* matter here who ordered the forms' distribution because, according to the Defendants, it goes to whether there was a service, program, or activity under the ADA. (Doc. 126 at 27, 29). The bigger problem is that counsel took known facts and built a narrative around them without making any effort to determine whether the ultimate story being told was accurate. It was not reasonable in this case to continue to rely on the 2019 "investigation" and not call or otherwise contact Ms. Stewart before making a legal argument based on this fact in a motion to dismiss, in an answer, and at oral argument. Simpson also defends asserting this fact in the present case on the grounds that she had not received any information contradicting the facts she knew in 2019. This argument is unavailing because, as she concedes, facts mattered differently in the other 2019 litigation and in the context of the present case. And critically, one reason she did not receive any information is because she did not ask for it. Again, counsel's inquiry, or lack thereof, was not "reasonable under the circumstances" as required by Rule 11.

The Court must also determine whether the conduct here was "akin to contempt." *See Kaplan*, 331 F.3d at 1255–56. The Eleventh Circuit has "not elaborated on the 'akin to contempt' standard" for *sua sponte* Rule 11 sanctions, as noted in *McDonald v. Emory Healthcare Eye Center*, 391 F. App'x 851, 853 (11th Cir. 2010) (per curiam). In a recent decision, the Eleventh Circuit affirmed a district court's *sua sponte* imposition of Rule 11 sanctions without mentioning the "akin to contempt" standard. *See generally Johnson*, 2021 WL 3627604. However, the Eleventh Circuit has upheld a district court's *sua sponte* imposition of Rule 11 sanctions where an attorney filed a "factually and legally inaccurate" writ of execution where no judgment had been entered. *iParametrics, LLC v. Howe*, 522 F. App'x 737, 739 (11th Cir. 2013) (per curiam).[6] The court explained that "[t]he district court was entitled to find that [the attorney's] conduct was 'akin to contempt,'" noting that the attorney "could readily have discovered and corrected his pleadings, but instead his misrepresentations went undetected for over a year." *Id.* (citation omitted). "The district court did not abuse its discretion by formally reprimanding [the attorney] based on the potential seriousness of his misrepresentation, the extent of his negligence, and his delays in undertaking corrective measures." *Id.* at 740. Based on the potential seriousness of the misrepresentation in this case involving a death-row inmate and the extent of counsel's negligence, which the Court finds rises to the level of recklessness, the Court finds that the conduct here is "akin to contempt."

---

[6] While the Court recognizes that *iParametrics* is an unpublished opinion, the Court finds its analysis persuasive.

12

The Court does not believe that counsel acted maliciously, and the Court acknowledges that counsel notified the Court soon after learning that the repeated assertion was false. Nevertheless, counsel's conduct was inexcusable. The Court finds that the conduct violates Rule 11 and warrants sanctions.

**B.    Who to Sanction**

Next, the Court must determine who should be sanctioned. Rule 11 allows the Court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1). As discussed above, the Court finds it would be improper to sanction Commissioner Dunn or Warden Raybon, and the Court declines to sanction either of them.

Simpson "sign[ed]," "submit[ed]," and "fil[ed]" with the Court the answer and motion to dismiss containing the factual contention lacking evidentiary support, and she also "later advocat[ed]" the motion to dismiss at the February 8, 2021 hearing. *See* FED. R. CIV. P. 11(b). Additionally, at the September 1, 2021 hearing, Simpson stated that she drafted the offending papers and claimed responsibility for their contents. (Doc. 146 at 17:10–16, :24–25). Accordingly, the Court finds it appropriate to sanction Simpson for the Rule 11 violation.

Rule 11 also specifies that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1). When asked at oral argument why this provision of the rule should not apply with analogous effect to the Attorney General, Simpson was unable to articulate a reason. (Doc. 146 at 17–18). The Court finds that there are no exceptional circumstances

13

here which warrant excusing the employing authority from being held jointly responsible for the violation of Rule 11.  The Court also finds that sanctioning the Office of the Attorney General would aid in deterring similar conduct in the future by employees of the Attorney General's Office and other similarly situated counsel and litigants.  Accordingly, the Court finds it appropriate to sanction the Office of the Attorney General for the Rule 11 violation.

**C.     What Sanction(s) to Impose**

Finally, the Court must determine the appropriate sanction(s) to impose.  Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include . . . an order to pay a penalty into court." FED. R. CIV. P. 11(c)(4).  The Advisory Committee's Note to the 1993 Amendment outlines "a variety of possible sanctions" for Rule 11 violations, "such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; [and] referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head)."  In determining the sanction to impose, the Court may consider the following factors:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants . . . .

FED. R. CIV. P. 11 advisory committee's note to 1993 amendment; *accord McDonald*, 391 F. App'x at 853 (stating that courts should consider the above factors in determining an appropriate sanction).

The Court finds that the improper conduct here was reckless, particularly given that this is a case involving the death penalty; it was not an isolated event but rather occurred across two written filings and was stated orally at a hearing; the assertion was material to the Defendants' defense of the Plaintiff's ADA claim; the Attorney General's Office has made this assertion multiple times throughout three different cases;[7] it caused the Court to spend more time considering the issue of whether the form distribution was a service, program, or activity under the ADA, as opposed to other issues; and the responsible person—Simpson—is trained in the law. However, there is no evidence or indication that the assertion was "intended to injure." The Court also acknowledges that counsel notified the Court soon after learning that the repeated assertion was false. *See* FED. R. CIV. P. 11 advisory committee's note to 1993 amendment ("Such corrective action . . . should be taken into account in deciding what—if any—sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.").

Considering the totality of the circumstances, the Court finds that both monetary sanctions and a formal reprimand are appropriate. The Court finds that Simpson shall pay a monetary penalty to the Clerk of this Court in the amount of $1,500.00 within 30 days of

---

[7] In addition to this case, the assertion was made in two other cases involving Alabama death-row inmates: *Price v. Dunn*, 1:19-cv-57 (S.D. Ala.), and *Woods v. Dunn*, 2:20-cv-58 (M.D. Ala.). Although the assertion was also made in *Price* and *Woods*, it was not material to the defense or outcome of either case.

15

entry of this Order.  The $1,500.00 monetary penalty shall be borne personally by Simpson and shall not be borne by the State of Alabama.  If Simpson is financially unable to pay the $1,500.00 sanction to the Clerk of Court, she shall so notify the Court in writing, including supporting documentation demonstrating her financial hardship, within 14 days of entry of this Order.  Further, this Order constitutes a formal reprimand of Assistant Attorney General Lauren Simpson and the Office of the Alabama Attorney General Steve Marshall for their failures to comply with Rule 11.  The Court finds that these sanctions are sufficient to deter such conduct by Simpson and the Office of the Alabama Attorney General in the future and to deter similar conduct by other litigants. *See* FED. R. CIV. P. 11(c)(4).

## V. CONCLUSION

For the foregoing reasons, the Court finds that Simpson, on behalf of the Alabama Attorney General, violated Rule 11 by making a factual contention without evidentiary support and without conducting a reasonable inquiry.  Accordingly, the Court hereby FORMALLY REPRIMANDS Assistant Attorney General Lauren Simpson and the Office of the Alabama Attorney General Steve Marshall for their failures to comply with Rule 11.  Additionally, it is ORDERED that within 30 days of entry of this Order, Simpson shall personally pay a monetary sanction of $1,500.00 payable to the Clerk of this Court.

DONE this 24th day of September, 2021.

                                        /s/ Emily C. Marks
                                  EMILY C. MARKS
                                  CHIEF UNITED STATES DISTRICT JUDGE